## WILLSON v CANFIELD

Ohio Appeals, 6th Dist, Fulton Co

No 127.   Decided June 30, 1934

Fraser, Hiett, Wall & Effler, Toledo, and C. L. Newcomer, Bryan, for plaintiff in error.

F. S. & J. M. Ham, Wauseon, D. B. Johnson, Wauseon, J. C. Paxson, Wauseon, and B. D. Chandler for defendant in error.

## OPINION

By RICHARDS, J.

In the trial of the case much controversy existed as to whether confidential relations existed between the parties. The plaintiff, Canfield, is an attorney of much experience in business and in the purchase of stocks on the market, but unfamiliar with bank statements, while the defendant Willson was a banker and familiar with the published statements of the First National Bank of Wauseon. We think it clear, how-

ever, that the parties in this transaction were dealing at arms' length, and no confidential relation existed between them. The trial court therefore committed prejudicial error in refusing to give, before argument, the following written instruction asked by counsel for Willson:

"There is no competent evidence tending to prove the existence of a confidential or fiduciary relation between these parties with reference to the purchase and sale of this stock. You will, therefore, disregard that claim of the plaintiff."

The trial court also committed prejudicial error in refusing to give request No. 4 asked by counsel for Willson. That request reads as follows:

"The mere expression of opinion, if there was such an expression by the defendant, of the value of the stock is not such a false or fraudulent representation as would entitle the plaintiff to recover."

That request is strictly and technically correct in stating that the "mere" expression of opinion would not be a false or fraudulent representation. Of course, as was held in **Williams v State, 77 Oh St, 468,** a representation of value may or may not be a statement of existing fact which the speaker intends to be an inducement to be relied on by the other party.

Request No. 7 is a correct statement of the law and should have been given in charge to the jury. It reads as follows:

"If the defendant at the time of making the sale, in good faith, said to plaintiff in substance, that he, defendant, knew nothing of the details as to the financial condition of the bank, and that he was accepting as true the published statements, your verdict must be for the defendant."

Of course, it would remain for the jury to find from the evidence whether the statements made were made in good faith and whether Willson did or did not know details as to the financial condition of the company. Refusal to give that request constituted prejudicial error.

Willson also was entitled to have submitted to the jury by the court request No. 14, which reads as follows:

"The published statements of the bank are required by law to be true and correct in every detail. In the absence of any knowledge that the statements were false, the defendant had the full right to rely upon these statements as being true. He cannot be found to have made fraudulent representations if the information and opinions he gave the plaintiffs were, in good faith, based upon and in explanation of the bank statements, even though it later developed that the statements, or any one of them, was false and misleading."

Refusal to so charge the jury constituted prejudicial error.

It was, of course, vitally important for the jury to determine whether Willson, in what he said to Canfield, was relying in good faith upon information which he acquired from the published statements of the bank or whether he relied on information tending to show that the bank was in a shaky condition and would probably not pay any more dividends. As a stockholder he was, if he had no other information, justified in relying on the representations of a principal officer of the bank as to its financial condition and, on the other hand, if he had no knowledge as to the financial condition of the bank other than the published statements, he had a full right to rely on those statements as being true. It was for the jury to say, under the evidence, on what he did in fact rely.

It is contended that even if the plaintiff below were entitled to recover, the verdict and judgment are far in excess of the amount that should have been awarded. The stock was sold on April 13, 1931 for $1650.00, while the verdict is $3135.09. The bank failed on August 21, 1931, and was taken over for liquidation by the Comptroller of the Currency, and double liability on the stock was assessed by him on October 22, 1931. The apparent excess in the amount of the verdict arises from the fact that this assessment, amounting to $1100.00 on the eleven shares of stock, was paid by Canfield and the amount thereof added to the price he paid for the stock. On this subject the trial judge charged the jury as follows:

"You may also allow the plaintiff, if your verdict be for him, as compensatory damages, any further or additional sum or sums which you may find from a preponderance of the evidence plaintiff has paid up to the time this action was instituted, viz: December 5, 1931, on account of the levy of this assessment by the Comptroller of the Currency against any of the stock of The First

National Bank of Wauseon, Ohio, then held by plaintiff, which he had purchased from the defendant on April 13, 1931."

The flaw in this part of the charge is that it assumes, from the fact that a 100% assessment was levied in October, 1931, that the bank was, on April 13, 1931, insolvent to such an extent that, if the bank were liquidated in April, 1931, an assessment of $100.00 a share by way of double liability would have been necessary. That may or may not have been true. It was a question of fact which should have been left to the jury to determine. What may have happened in the way of depreciating the assets of the bank or increasing the liabilities between April 13, 1931, and the time of its failure, more than four months later, might aid in determining the value of the stock in April. The court can not fail to take judicial notice of the fact that during that period many banks were failing and the value of assets shrinking. It may be, as suggested by counsel, that the failure of banks in Toledo about that time had much to do with the failure of The First National Bank of Wauseon. The measure of damages would, of course, be the difference in value between the price for which the stock was sold on April 13th and its actual value on that date. If the bank, at that time, was in such a financial condition that on a sale of its assets there would be just enough to pay off its liabilities, then the stock would have been worthless and the measure of damages would be the price paid for the stock, in the event the plaintiff was found entitled to recover. Before any sum, in addition thereto, could be awarded to the plaintiff, it must appear from the evidence that the assets at that time were insufficient to meet its liabilities and the amount of such deficiency. Before an award could be made by the jury to reimburse the plaintiff to the extent of $100.00 a share for double liability paid by him, it would have to appear that at the time of the sale the stock was worth $100.00 a share less than nothing.

The trial court should not have sent the second amended petition to the jury to be considered in its deliberations, because various allegations therein contained had been ordered stricken out but still remained in the pleading. However, we find no prejudicial error to have resulted from this.

We have examined all of the other claimed errors but find none to the prejudice of the plaintiff in error. However, for the reasons given the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.

WILLIAMS and LLOYD, JJ, concur.